UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CRAIG C. | : |
| | : |
| v. | : C.A. No. 22-00032-JJM |
| | : |
| KILOLO KIJAKAZI, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on January 20, 2022, seeking to reverse the Decision of the Commissioner.  On June 1, 2022, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 10).  On June 28, 2022, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner.  (ECF No. 11).  A Reply was filed on July 12, 2022.  (ECF No. 12).

This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 10) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 11) be GRANTED.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 8, 2019 (Tr. 148-151) and for SSDI on January 7, 2019 (Tr. 152-156) alleging disability since September 21, 2013.  His date last insured

("DLI") is March 31, 2014. (Tr. 15). Both applications were denied initially on December 17, 2019 and on reconsideration on April 27, 2020. (Tr. 15). Plaintiff requested an Administrative Hearing. On January 20, 2021, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 34-51). The ALJ issued a partially favorable decision to Plaintiff on February 10, 2021. (Tr. 12-27). The Appeals Council denied Plaintiff's request for review on August 26, 2021. (Tr. 4-6). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff contends that the ALJ erred by finding no severe impairment present before his DLI.

The Commissioner disputes Plaintiff's claims and argues there was no error in the ALJ's determination that Plaintiff did not have a severe impairment before his DLI.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker

v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B.  Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D.  The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be

met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.   Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be

expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>   (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>   (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>   (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>   (4)   Treatment, other than medication, for relief of pain;
>
>   (5)   Functional restrictions; and
>
>   (6)   The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67

F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

This appeal is directed at the ALJ's Step 2 denial of DIB benefits to Plaintiff for the remote period between his alleged onset date (September 21, 2013) and his DLI for DIB eligibility (March 31, 2014). The ALJ awarded SSI benefits to Plaintiff finding disability beginning on January 1, 2018. (Tr. 27). The SSI award is not at issue in this appeal.

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At Step 2, the ALJ found that Plaintiff had no severe impairments prior to the DLI, although he had medically-determinable impairments of epilepsy, depressive disorder, substance dependence, and neurocognitive disorder. The ALJ did not conduct additional analysis for the time period prior to the DLI after finding that Plaintiff had no severe impairments. Thus, the ALJ denied Plaintiff's claim for DIB.

### B. The ALJ's Finding of No Severe Impairments or Combination of Impairments at Step 2

Plaintiff contends that the ALJ committed an error of law when he ended the sequential analysis at Step 2 for the time period prior to his DLI and denied his DIB claim. (ECF No. 10 at p. 10). At Step 2, the ALJ is tasked with making a determination as to whether the medical evidence establishes an impairment or combination of impairments of such severity as to be the basis for a finding of inability to work. 20 C.F.R. § 404.1520a(a), 416.920a(a). The Court of Appeals for the First Circuit has noted that Step 2 "constitutes no more than [ ] a de minimis screening policy…" to be used to "screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of HHS, 795 F.2d 1118, 1122 (1st Cir. 1986). Plaintiff asserts that, given this caselaw, the bar to prove a severe

impairment is "notoriously low" and was met in this case. (ECF No. 10 at p. 10). The Commissioner persuasively counters that this case is about insufficient evidence of the severity of Plaintiff's impairments for the relevant 2013-2014 time period. The Commissioner accurately points out that the state agency consultants found insufficient evidence present for this time period, (Tr. 63, 65, 73), and that nothing in the 2020 neuropsychological evaluation (Exh. 14F) supports a finding of severity during the relevant time period.

After considering the relevant standard and the facts presented, the Court agrees with the Commissioner's assessment and rejects Plaintiff's claim that the ALJ committed a Step 2 error. First, Plaintiff bears the burden of proof at Step 2 to demonstrate that he is disabled, and the ALJ supportably found that Plaintiff has not met his burden here. 20 C.F.R. § 404.1512(a). Second, although Step 2 is plainly a screening mechanism, the ALJ properly utilized the mechanism to determine that, prior to the DLI, Plaintiff did not prove that he had a severe impairment.

The medical evidence of record established that Plaintiff suffered an epidural hematoma in February 2003 after he fell from a ten-foot ladder and hit his head on pavement. (Tr. 19). He was in a medically induced coma for two weeks, and the ALJ noted that "[d]iagnostic and radiological studies" from 2003-2005 were "abnormal." Id. In November 2013, Plaintiff had a head CT performed. The CT revealed "status post left frontotemporal craniotomy." (Tr. 426). An EEG performed the next day revealed "recurrent intrusions of slowing in the theta frequency range…consistent with an underlying abnormality in the left temporal region, in addition to a possible skull breach artifact located more anteriorly." (Tr. 410).

The ALJ acknowledged these abnormal results, but noted "still, through the date last insured, neurological examinations were stable" and that "treatment has been generally successful" in controlling the symptoms he experienced. (Tr. 19). The ALJ recounted that the seizure disorder and the traumatic brain injury were "managed conservatively and the lack of more aggressive treatment suggests the claimant's symptoms and limitations were not as severe as he alleged." Id.

Plaintiff disputes the ALJ's conclusion and argues he met his burden of proof at Step 2. He points to two discrete arguments in support of his claim.

### 1. The State Agency Consultants

First, Plaintiff contends that the ALJ erred in misstating a finding of the state agency consultants. In the Decision, the ALJ stated that "[t]he opinions of the state agency doctors finding no 'severe' impairments prior to the expiration of the DLI are fully persuasive." (Tr. 24). Both Plaintiff and the Commissioner agree that the state agency consultants did not make an explicit finding that Plaintiff had no severe impairments. The parties disagree, however, about the import of the sentence in the context of the overall evaluation of the state agency consultant's opinions by the ALJ.

Plaintiff contends this sentence, and the ALJ's "pre-DLI Step Two finding" is "based on patent misunderstanding and misreading of the state agency non-examining consultants' opinions." (ECF No. 10 at p. 12). The Commissioner counters that this sentence is – at most – harmless error and notes that "remand is not essential if it will amount to no more than an empty exercise." (ECF No. 11 at p. 7 quoting Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000)). The Commissioner accurately points out that the ALJ's analysis of the state agency consultants' opinions is not confined to that single sentence and that the Decision, read as a whole, fairly represents the state agency consultants' conclusions and supports a finding of no severe impairments. The Court agrees.

In the Decision, the ALJ stated that "[o]verall, the evidence of record prior to the onset date of disability fails to consistently document any significant functional deficits related to the alleged impairments." (Tr. 22). The ALJ noted that Plaintiff did not "receive any consistent treatment" before the DLI, and that the state agency physicians "noted this in their detailed review of the record." Id. The ALJ stated that the state agency consultants "reviewed all of the relevant evidence for that time period and have detailed knowledge of the standard of disability as set forth by the

Commissioner." Id. Moreover, the ALJ noted that "the claimant received treatment for an acute injury, but very little after it. There were no consistent findings to support functional deficits [pre-DLI]." (Tr. 25).

While the single sentence in the ALJ's decision relied upon by Plaintiff technically misstates the state agency consultant's opinions, the entirety of the opinion makes it clear that the ALJ's ultimate finding is well supported. I find the ALJ's misstatement to be entirely harmless. Accordingly, it is the Court's opinion that no purpose would be served by remanding for the ALJ to remove the suspect language from his decision. "If the likely outcome on remand is clear and the same as that reached by the ALJ, the error is harmless and the court should uphold the denial of benefits." Heidi M. v. Berryhill, No. CV 17-412PAS, 2018 WL 6788034, at *2 (D.R.I. Dec. 26, 2018) citing Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999).

2. **Dr. David Ahern's Neuropsychological Evaluation**

Plaintiff next contends that David C. Ahern, Ph.D.'s October 23, 2020 neuropsychological exam supports a finding of disability prior to the DLI. Plaintiff points out that the state agency consultants did not have the benefit of reviewing Dr. Ahern's evaluation which considered the medical records from the traumatic brain injury in 2003 through the present date and noted that there was a connection between his 2003 traumatic brain injury and his subsequent neurocognitive disorder. (Tr. 1042-1049). Plaintiff argues that Dr. Ahern's exam provides a "direct link" between the 2003 traumatic brain injury and his neurocognitive disorder and argues that the ALJ impermissibly interpreted the pre-DLI records in contravention to the conclusion of Dr. Ahern. This characterization of the evaluation is a stretch. While it is accurate that Dr. Ahern found there to be a link between the 2003 injury and his neurocognitive disorder, (Tr. 1045), Dr. Ahern's evaluation does not address the relevant time period from September 2013 through March 2014 in any direct fashion. In fact, at this October 2020 exam, Plaintiff told Dr. Ahern that his "[cognitive] concerns have become progressively worse within the last 3-5 years and have been noticed by his

family." (Tr. 1043). Giving the benefit of the doubt to Plaintiff's self-report to Dr. Ahern, Plaintiff's concerns started to become worse on or about late 2015, i.e., five years before Dr. Ahern's examination. The narrow time period in dispute for this appeal is from September 2013 through March 2014, and Dr. Ahern did not opine as to Plaintiff's functional abilities for that time period, nor did Plaintiff's self-report to Dr. Ahern aid his case. The "direct link" that Plaintiff argues Dr. Ahern draws between Plaintiff's 2003 injury and his neurocognitive disorder supports the ALJ's determination that Plaintiff had medically-determinable impairments but does not advance Plaintiff's argument that he had a severe impairment at the relevant time.

Although Plaintiff may disagree with the ALJ's conclusion that he has not established the presence of any severe impairments prior to his DLI, the bottom line is that the ALJ properly evaluated the evidence presented, and his reasons are supported by substantial evidence of record. Thus, the ALJ's findings are entitled to deference, and Plaintiff has not established any legal error.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 10) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 11) be GRANTED. I further recommend that Final Judgment enter in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 24, 2022